UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

_____
                                        )
UNITE HERE LOCAL 217,                   )
                                        )
        Petitioner-Plaintiff,           )
                                        )
    v.                                  )      CA. No. 10-05 S
                                        )
SAGE HOSPITALITY RESOURCES, d/b/a       )
RENAISSANCE PROVIDENCE HOTEL,           )
                                        )
        Respondent/Defendant.           )
_____)

**OPINION AND ORDER**

WILLIAM E. SMITH, United States District Judge.

     Plaintiff UNITE HERE Local 217 (the "Union") filed this
Petition to compel Defendant Sage Hospitality Resources, d/b/a
Renaissance Providence Hotel (the "Hotel") to submit to
arbitration over whether the Hotel must recognize the Union as
the collective bargaining agent for Hotel employees.  The Hotel
has refused arbitration.  It claims it is no longer bound by the
arbitration clause in a neutrality agreement between the
parties, because the agreement has expired.  The Union argues
the agreement was still operative when it demanded recognition.
The question before the Court is whether the Court or an
arbitrator should decide whether the agreement was in effect at
the time of the demand, and thus whether the dispute over
recognition should go to arbitration.

For the reasons explained below, the Court finds that the question properly belongs to the arbitrator. It therefore grants Plaintiff's request and refers this matter to arbitration.

I. Background

The Union and the Hotel entered the neutrality agreement on June 9, 2003. (See Memorandum of Agreement, June 9, 2003, Compl. Ex. A. ("Agreement").) The basic bargain was that the Union would refrain from picketing during the development and opening of the facility, while the Hotel would not oppose Union recruiting activities. The agreement then established a procedure, known as a "card check," by which the Union could become the collective bargaining agent for employees:

> The Union may request recognition as the exclusive collective bargaining agent for [Hotel e]mployees. [An agreed-upon arbitrator] will conduct a review of . . . membership information submitted by the Union in support of its claim to represent a majority of such [e]mployees. If that review establishes that a majority of . . . [e]mployees has designated the Union as [its] exclusive collective bargaining representative or joined the Union, the [Hotel] will recognize the Union as such representative of such [e]mployees.

(Agreement ¶ 9.) The parties also consented to binding arbitration of disputes arising under the contract:

> The parties agree that any dispute over the interpretation or application of this agreement shall be submitted to expedited and binding arbitration pursuant to [the] procedures below. . . . The parties hereto agree to comply with any order of the

> arbitrator, which shall be final and binding, and furthermore consent to the entry of any order of the arbitrator as the order or judgment of the United States District Court for the District of Rhode Island without entry of findings of fact and conclusions of law.

(Id. ¶ 15.)

The origin of this controversy is that parties made the effective term of the contract contingent on later events. The agreement provides that "[t]his [a]greement shall be in full force and effect from the date it is fully executed . . . until thirty months from the full public opening of the [H]otel." (Id. ¶ 16.) At least two happenings present themselves as candidates for the "full public opening." First, on June 1, 2007, the Hotel held a ceremony to celebrate the "opening of [its] doors," attended by the Mayor of Providence. Daniel Barbarisi, After 80 Years, a Good Night's Rest, Providence Journal, June 2, 2007. At that time, the Hotel had begun booking rooms, but construction on some facilities, including a restaurant, was still ongoing. Second, several months later, on August 21, 2007, the Hotel hosted a "grand opening" gala, boasting the Governor of Rhode Island. The affair featured a ribbon-cutting ceremony followed by a party for several hundred guests. (See Affidavit of Jenna Karlin, Jan. 7, 2010 ("Karlin Aff."), Ex. D.)

The issue of which gathering qualified as the "full public opening" arose on January 5 of this year, when the Union demanded arbitration to verify its majority status at the Hotel. The Hotel balked, declaring that the agreement had expired on December 1, 2009, thirty months after the "opening of its doors" on June 1, 2007. The Union shot back that the agreement was still binding, because it would survive until thirty months after the "grand opening" in August 2007. However, because the Hotel disagreed, the Union issued a second demand for arbitration "over the meaning of the contractual term 'full public opening.'" (Pet. ¶ 18.) The Hotel likewise rejected that demand.

On January 7, 2010, the Union filed a Petition to compel arbitration of both its recognition request and the threshold question of whether the agreement was valid when it made the demand. It now moves for an order compelling arbitration of those two issues.

II. Discussion

Before the Union can secure arbitration to confirm its majority status, it must clear the initial hurdle of demonstrating that the neutrality agreement was in force when it invoked the arbitration clause. It argues that an arbitrator may decide when the "full public opening" occurred. The Hotel, however, says the Court must settle that matter, because it is a

4

threshold issue of arbitrability.   Thus, the main question posed goes to the threshold issue of the duration of the agreement, and whether it was in effect at the time the Union demanded the card check.   The pre-threshold question is whether the Court or an arbitrator should decide when the contract expired.

After holding a hearing on this matter on March 2, 2010, and considering the issues carefully, the Court concludes that the arbitrator must make the call.   The reason, as fully explained below, is that this conflict fits within a line of First Circuit cases holding that disputes over contract termination belong in arbitration.

A.   Legal standard

Generally, whether a labor dispute must be arbitrated "is a matter to be determined by the court, and a party cannot be forced to arbitrate the arbitrability question." Litton Fin. Printing Div. v. N.L.R.B., 501 U.S. 190, 208 (1991) (citation and internal quotation marks omitted); First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944-45 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.") (internal quotation marks, citation, and alterations omitted).

However, that principle does not apply in all circumstances.   If arbitrability involves a dispute over the

termination of an agreement, the general rule may yield to a different standard articulated by the First Circuit:

> Whether a dispute concerning the termination of [a labor] agreement should be adjudicated by an arbitrator or by a court depends on whether the arbitration clause in the agreement is "broad" or "narrow." Under a broad arbitration clause, i.e. one covering all types of disputes, all questions, including those regarding termination, will be properly consigned to the arbitrator.

New England Cleaning Servs., Inc. v. SEIU, Local 254 AFL-CIO, 199 F.3d 537, 541 (1st Cir. 1999) (internal quotation marks and citation omitted); accord Local Union 1253, Int'l Bhd. of Elec. Workers, AFL-CIO v. S/L Constr., Inc., 217 F. Supp. 2d 125, 136 (D. Me. 2002) ("When the collective bargaining agreement contains a broad arbitration clause, however, issues of contract termination must be submitted to an arbitrator.").

In other words, if an agreement contains a "broad" arbitration clause, the arbitrator, not the court, must be the one to settle disputes over the application of contract termination provisions.  The First Circuit applied this standard in IBEW, Local 1228, AFL-CIO v. Freedom WLNE-TV, Inc.:

> Generally it is up to the court to determine, in the first instance, whether the parties have entered into a contract which imposes the duty to arbitrate, and whether that contract is still binding upon them. Where, however, the determination of whether a contract is still in effect depends solely upon construction of the collective bargaining agreement, the issue of contract termination may appropriately be decided by the arbitrator.

IBEW, Local 1228, AFL-CIO v. Freedom WLNE-TV, Inc., 760 F.2d 8, 10 (1st Cir. 1985).  In Freedom WLNE-TV, the arbitration clause at issue extended to "any and all disputes," and hence obligated the parties to arbitrate their disagreement over whether the contract had expired.  In contrast, the arbitration clause in New England Cleaning was "narrow," because it covered "only a limited range of disputes, such as employee grievances."  199 F.3d at 541.  It thus did "not contemplate the arbitration of contract termination issues," which could properly be addressed by the court.  Id. at 542.

B.   Application

The Hotel agreed to arbitrate "any dispute over the interpretation or application of this agreement."  (Agreement ¶ 15.)  Because the present conflict qualifies as such a dispute, the Hotel must submit to arbitration.

1.   The termination dispute is arbitrable

On its face, this conflict lends itself to a straightforward resolution.  The preliminary argument concerns whether the Union made a timely demand for recognition, which depends on whether the neutrality agreement had expired.  To resolve that question, the Union demands arbitration of "the meaning of the contractual term 'full public opening.'"  (Pet. ¶ 18.)  Thus, as in Freedom WLNE-TV, resolving this matter requires "construction" of an agreement to determine "whether

7

[the] contract is still in effect." <u>Freedom WLNE-TV, Inc.</u>, 760 F.2d at 10. Furthermore, there is no question that the arbitration clause covering "any dispute" under the agreement must be considered "broad" within the meaning of <u>New England Cleaning</u>. <u>See</u> 199 F.3d at 541; <u>Me. Sch. Admin. Dist. No. 68 v. Johnson Controls, Inc.</u>, 222 F. Supp. 2d 50, 55 (D. Me. 2002) (finding a provision obligating the parties to arbitrate "all disputes" not resolved by negotiation qualified as a "broad" clause). The Hotel does not argue otherwise.

Accordingly, this matter falls within the rule governing "dispute[s] concerning the termination" of agreements containing "broad" arbitration clauses. <u>New England Cleaning</u>, 199 F.3d at 541. It is therefore "properly consigned to the arbitrator." <u>Id.</u>[1]

---

[1] While both <u>New England Cleaning</u> and <u>Freedom WLNE-TV</u> involved collective bargaining agreements ("CBAs"), there is no reason that a different standard should apply to the neutrality agreement here. Traditionally, the arbitration clause in a CBA reflects a <u>quid</u> <u>pro</u> <u>quo</u> that keeps a union's economic power in check. In exchange for giving up the right to strike, a union gets expedited dispute resolution for any contest over the terms of employment. Under the neutrality agreement in this case, the Union was not yet the collective bargaining agent for employees, and so lacked the ability to shut down business entirely if it believed the Hotel was shirking its obligations. Nevertheless, the Hotel apparently placed a premium on avoiding the threat of picketing and negative publicity during efforts to open the facility. The Union wielded enough leverage to extract a pledge to arbitrate "any dispute" arising under the agreement. The fact that the Hotel made that commitment before the Union established itself as the official representative of employees is not a reason not to enforce it.

The Hotel says this analysis oversimplifies the issues, but none of the wrinkles it identifies can prevent arbitration. It first objects that the Freedom WLNE-TV rule only applies to issues that "depend[] solely upon construction" of the terms of the agreement. Freedom WLNE-TV, 760 F.2d at 10. The issue here does not qualify, according to the Hotel. When the "full public opening" took place, it avows, is a question of fact that may require an evidentiary hearing (although only to the extent the Court disagrees that June 1, 2007 is obviously the correct date). To support this proposition, the Hotel cites South Bay Boston Mgmt., Inc. v. UNITE HERE Local 26, 584 F. Supp. 2d 428 (D. Mass. 2008), aff'd, 587 F.3d 35 (1st Cir. 2009). There, the district court in Massachusetts appeared to view an identical issue as dependent on fact questions: "[The court] does not have sufficient evidence to determine the date of the 'full public opening of the hotel,' which is necessary in determining whether or not the [a]greement has expired." Id. at 431.

The Hotel's argument does not hold together. For one thing, little significance can be milked from the comment quoted above. The district court in South Bay Boston Mgmt. expressed no view on whether it or an arbitrator should be the one to gather evidence, and decided the case on other grounds. See id. at 432. But more fundamentally, in the Court's view the contract termination issue here is not materially different from

the one in Freedom WLNE-TV.   In that case, a union and its
employer entered a collective bargaining agreement that
declared, "pending and during the negotiation of a new contract
. . . business of the [e]mployer shall continue in accordance
with all the terms of this contract."   Freedom WLNE-TV, 760 F.2d
at 9 (alterations omitted).   After the initial term of the
agreement, renewal negotiations failed.   The union subsequently
submitted a grievance to the employer for resolution under the
contract.   The employer refused, asserting that the deal had
expired.   See id. at 9-10.   The union sought arbitration of the
question, "[t]o what extent the contract, by its own terms, . .
. continues in effect beyond [its initial term] and what is the
proper remedy."   Id. at 10.

It is true that the First Circuit characterized that
question as dependent "solely upon [the] construction" of the
terms of the agreement.   However, the opinion in Freedom WLNE-TV
reveals that the arbitrator may also have been required to
resolve factual matters.   The First Circuit expressed some
uncertainty about whether the parties had completely abandoned
their efforts to renew the agreement.   It explained that
negotiations had "apparently continued through at least mid-
September" of 1983, "with each side proposing, although never
agreeing upon, different versions of an extension agreement."
Id. at 9-10.   The union submitted its grievance on September 22

of that year.  Consequently, it is plausible that, in interpreting and applying the phrase "pending and during the negotiation of a new contract" to evaluate whether the contract continued "by its own terms," the arbitrator would have had to determine whether any negotiations were "pending" at the time the grievance was filed.

In short, the arbitration in <u>Freedom WLNE-TV</u> may very well have presented a mixed question of contract interpretation and fact, as the proposed arbitration here does.  The question of when the "full public opening" occurred requires the arbitrator to interpret those words, and then apply them to facts about the Hotel's operations in 2007.

In any event, <u>Freedom WLNE-TV</u> is not the last word in this Circuit on the arbitrability standard for termination disputes.  To the extent that the case applies only to issues of pure contract interpretation, <u>New England Cleaning</u> expanded its reach.  Given a "broad" arbitration clause, "all questions . . . regarding termination" belong to the arbitrator, not only those that depend "solely" on the construction of contract terms.  <u>New England Cleaning</u>, 199 F.3d at 541.

As a second attempt to dodge the arbitration clause, the Hotel contends that the neutrality agreement sets a "date certain" for its demise.  "[T]he presumption in favor of arbitrating disputes over contract duration can be overcome by a

clear showing that the parties intended for the underlying contract to expire . . . before the relevant dispute arose." Municipality of San Juan v. Corporacion para el Fomento Economico de la Ciudad Capital, 415 F.3d 145, 151 (1st Cir. 2005) (quoting Nat'l R.R. Passenger Corp. v. Boston & Me. Corp., 850 F.2d 756, 763 (D.C. Cir. 1988)). "Such a showing would be accomplished . . . if the contract clearly 'provides that it will expire on a date certain.'" Id. (quoting Nat'l R.R., 850 F.2d at 763).

The "date certain" rule has no applicability here. The very existence of this dispute demonstrates that the final day of the contract term was anything but "certain." Indeed, as the Hotel concedes, an evidentiary hearing may be necessary to determine when the contract lapsed, based on when the "full public opening" occurred. The Hotel is correct that, unlike in Municipality of San Juan, the agreement here establishes no "prerequisite" to expiration. See id. The contract in this case is "certain" to expire. But that is not the same thing as designating a "date certain" for termination. By definition, any contingency built into a deadline that prevents affixing it to a calendar date means it cannot be a "date certain." As the Fifth Circuit explained when comparing the concept of a "date certain" to a limitations period in a waiver agreement between a taxpayer and the government: "Whereas neither time or tide can

stop the arrival of a date certain, a limitations period or span of time may be temporarily dammed up (stored for release at a future date) while calendar time continues to run." United States v. Newman 405 F.2d 189, 198 (5th Cir. 1968). There is thus no basis to withhold this conflict from arbitration on grounds that the parties "intended for the . . . contract to expire . . . before the . . . dispute arose." Municipality of San Juan, 415 F.3d at 151.[2]

The last quirk in this case is that the contract duration issue arises in a unique context. In Freedom WLNE-TV and New England Cleaning, the unions' sole requests for arbitration centered on termination disputes. See Freedom WLNE-TV, 760 F.2d at 10 (noting the request to arbitrate the question of whether the contract continued by its terms); New England Cleaning, 199 F.3d at 541 (noting arbitration demand on grounds that the employer had improperly terminated a collective bargaining agreement). In contrast, here, the Union first sought to arbitrate its majority status. The disagreement about the

---

[2] There is also a circular aspect to the Hotel's argument. A prerequisite to the "date certain" rule is that the last day of the contract must come "before the relevant dispute arose." Id. at 151. Yet, the Court cannot even confront the question of whether that is true unless it is clear that the threshold issue does not belong in arbitration — because, the Hotel says, of the "date certain" rule. In other words, to invoke that rule as grounds for wresting this case from the arbitrator, the Court would first have to assume the outcome: that it will resolve the termination dispute in the Hotel's favor.

lifespan of the contract arose only after the Hotel spurned that demand. On this basis, one might distinguish this matter from the termination disputes in Freedom WLNE-TV and New England Cleaning, because the end-date of the contract is not the core matter to be arbitrated. The Union, it could be argued, should not be allowed to bootstrap its way into arbitration by shifting the focus to a preliminary issue.

Nevertheless, the fact that the duration of the neutrality agreement is a threshold issue does not make the conflict about it any less real. The Hotel's refusal to address the Union's demand for recognition raised a live controversy over the termination date. And the Union has, in fact, now demanded arbitration of "the meaning of the contractual term 'full public opening.'" (Pet. ¶ 18.) As explained above, that plants this case directly in the path of the rule consigning termination disputes to arbitration if the agreement includes a "broad" arbitration clause. Thus, the Court lacks the authority to resolve the threshold question under First Circuit precedent. Instead, it must enforce the bargain struck by the parties and send this case to the arbitrator.[3]

---

[3] As a final observation, the Court notes that, despite the Hotel's suggestion to the contrary, the phrase "full public opening" may carry technical significance in industry practice. Given the possibility that it is a term of art, and therefore conveys more or different meaning than its plain English words would in another context, an arbitrator may be better suited to

2.   <u>The underlying dispute may be arbitrable under the post-expiration arbitrability standard</u>

A second factor supporting the Court's decision is that any victory on the threshold issue for the Hotel may be futile. Even if the Court were to accept the invitation to determine the length of the neutrality agreement, and further conclude that it was defunct when the Union made its demand, the rule allowing arbitration of disputes after a contract expires might still secure the relief the Union seeks.

The termination of a labor contract does not necessarily extinguish the duty to arbitrate disputes arising under it. "[I]f a dispute arises under [a] contract" containing an "unlimited" arbitration clause, the conflict "is subject to arbitration even in the postcontract period." <u>Litton Fin. Printing</u>, 501 U.S. at 205.  The First Circuit's opinion in <u>South Bay Boston Mgmt., Inc. v. UNITE HERE, Local 26</u>, describes the standard for "post-expiration arbitrability of disputes: 'we must determine if the particular dispute has its real source in the contract, and if so, we must consider whether postexpiration arbitration of the issue was negated expressly or by clear

decipher it than the Court.  <u>Cf. Line Drivers, Pickup & Delivery Local Union No. 81 v. Roadway Express Inc.</u>, 152 F.3d 1098, 1099 (9th Cir. 1998) (explaining that an arbitration award may be upheld if based on "the arbitrator's understanding of industry practices," and "derived from the arbitrator's unique expertise" in the field, as opposed to solely the express terms of the contract).

implication.'"   587 F.3d at 43 (quoting United Parcel Serv. v. Union de Tronquistas, 426 F.3d 470, 473 (1st Cir. 2005)).

The Court would have no trouble finding the Union's arbitration demand satisfies this test.   First, setting aside the threshold issue, the underlying "particular dispute" (whether majority status has been achieved, and recognition is therefore required) arises under the contract.   Even assuming the Union's recognition demand came after the expiration of the neutrality agreement, that alone would not establish that it also failed to attain majority status within the appropriate timeframe.   Indeed, the Union alleges that it recruited enough members during the contract period even as the Hotel defines it. (See Hr'g Tr. 18:6-23, Mar. 2, 2010.)   Whether that is true is the very inquiry contemplated by paragraph 9 of the agreement: it calls for a "review" of "membership information" to assess the Union's entitlement to be appointed collective bargaining agent for employees.   (Agreement ¶ 9.)   Accordingly, the controversy "has its real source" in the neutrality agreement. See United Parcel, 426 F.3d at 473-74 (concluding that a postexpiration dispute over vacation benefits arose under the agreement because vacation time "accrues during the term of the agreement under which it is earned").

Second, the agreement neither expressly nor "by clear implication" forbids postexpiration arbitration of issues that

legitimately arose under the contract during the effective dates.  As discussed, the arbitration clause governs "any dispute over the interpretation or application of th[e] agreement." (Agreement ¶ 15.)

Ultimately, the arbitrator will determine what impact, if any, the post-expiration arbitrability doctrine may have in this case.  The arbitrator may conclude that the "full public opening" was either the "opening of hotel doors" or the "grand opening," and from that, he may determine the expiration date of the neutrality agreement.  If he concludes that the demand for recognition came too late, he may nevertheless choose to address the underlying question of majority status.

III. Conclusion

For the reasons set forth above, Plaintiff's motion is GRANTED.  The Petition is therefore GRANTED and this matter is referred to arbitration for resolution of all outstanding issues pursuant to 9 U.S.C. § 4 and 29 U.S.C. § 185(a).

IT IS SO ORDERED.


*/s/ William E. Smith*

William E. Smith
United States District Judge
Date:  May 4, 2010