```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF RHODE ISLAND
_____
                                   )
UNITE HERE LOCAL 217,              )
                                   )
        Petitioner-Plaintiff,      )
                                   )
   v.                              )   CA. No. 10-05 S
                                   )
SAGE HOSPITALITY RESOURCES, d/b/a  )
RENAISSANCE PROVIDENCE HOTEL,      )
                                   )
        Respondent-Defendant.      )
_____)
```

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, United States District Judge.

For the reasons set forth in chambers with counsel, and further discussed in this Memorandum and Order, I have concluded that I should recuse myself from the above-styled case pursuant to 28 U.S.C. § 455(a). The circumstances that have led to my decision to recuse, and more particularly, the conduct displayed by pro hac vice counsel for the Defendant after I announced my decision to recuse require some discussion, however, and may call into question whether counsel's pro hac vice privilege should be revoked. Because much of counsel's conduct occurred after I announced my decision to recuse, the next-assigned judge should make the decision on whether to initiate any action to revoke. Accordingly, I will, in this Memorandum and Order,

simply summarize factually the proceedings leading up to my decision to recuse and counsel's subsequent conduct.

On May 4, 2010, I entered an Order ("Arbitration Order") granting a petition to compel arbitration filed by Petitioner-Plaintiff UNITE HERE Local 217 (the "Union"). Respondent-Defendant Sage Hospitality Resources, d/b/a Renaissance Providence Hotel (the "Hotel") is appealing that Order to the First Circuit, and has refused to go forward with arbitration until its appeal has been decided. Thus, the Union moved for an order directing the Hotel to obey the Arbitration Order. The Hotel countered by moving to stay the Arbitration Order pending its appeal, or in the alternative asking the Court to reconsider it. On September 24, 2010, I issued an Order ("Enforcement Order") granting the Union's motion to enforce the Arbitration Order and denying the Hotel's motion for a stay. I also denied in part the Hotel's motion to reconsider, but granted it in part insofar as the Enforcement Order clarified an aspect of the Arbitration Order that appeared to be of concern to the Hotel. On October 1, 2010, the Union filed its second motion to enforce the Court's Orders and to order the selection of an arbitrator. Exhibit A to that motion is the basis for my decision to recuse from this matter.

Exhibit A is a printout of an e-mail string between Michael T. Anderson, pro hac vice counsel for the Union, and Norman R.

Buchsbaum, pro hac vice counsel for the Hotel. The exchange began on September 24, 2010, when, upon receipt of the Enforcement Order, Mr. Anderson e-mailed Mr. Buchsbaum about proceeding with the selection and scheduling of an arbitrator. (Pl.'s Second Mot. to Enforce J. and the Ct.'s Orders, Ex. A (Pl's Mot.).) In response, Mr. Buchsbaum declined to do so, indicating that the Hotel would not proceed to arbitration until the First Circuit decided the Hotel's planned appeal of my denial of its motion to stay the Arbitration Order. (Id.) The attorneys continued to discuss the matter until their disagreement reached a crescendo in this September 27, 2010 e-mail by Mr. Anderson:

> All I want is for Judge Smith to tell you, for the third time, to obey his order now. There is no reason we can't proceed with arbitrator selection and scheduling while you take your emergency motion to the First Circuit. By the way, when will we see your motion?

(Id.)

The next day, Mr. Buchsbaum replied:

> Michael: You do not seem to appreciate the fact that our Constitution provides for a federal court system with appellate review of trial court actions; this judge stated that if he ordered arbitration, he would nullfy [sic] the last portion of the Neutrality Agreement that gives the arbitrator's award the same status as a court order, yet he failed to do that very thing. He also engaged in continued activism by talking about [in the Arbitration Order] when [the Union] obtained its cards when that was not in issue in your complaint. So, that is why there is a First Circuit. Perhaps you need to remind the Court of what

3

> transpired on July 28, so he is not removed from a remand. We expect to file either later today or early tomorrow. His personal sarcasm was intemperate and shocking -- despairs, gripes bemoans-, etc. –does not sound like what the code of conduct for federal judges prescribes. As far as relationship issues go, our office acts as lead negotiators for Sage, so restraint and discretion would seem to be in order.

(Id.)

A few days later, at an October 5, 2010 on the record in-chambers conference on the Union's second motion to enforce the Arbitration Order, I explained that after reading Mr. Buchsbaum's e-mail, I felt that given the state of the proceedings and the implications of his comments (including the allusion to possible misconduct by the Court) that "discretion here would be the better part of valor" and recusal the appropriate course of action. (Conference Tr. 4, Oct. 5, 2010.) I explained as follows:

> I'm concerned about some of the things that are said in the e-mail from you, Mr. Buchsbaum, to Mr. Anderson.
>
> . . . .
>
> Now, I went back and read everything, and I have to tell you I have absolutely no idea what you're talking about but I don't think it matters because [the e-mail], to me, has the inference attached to it that you're considering filing a disciplinary action against me for inappropriate -- some sort of inappropriate conduct that you perceive that I've engaged in, either in the opinion I've written or in the conduct of [the hearing on the Union's first motion to enforce the Arbitration Order].

4

> As I said, I can't for the life of me conceive what it is you think fell into any one of those categories, but I am -- I'm troubled enough by this that I think it might be better if I disqualify myself from this case.
>
> And I don't want to do that, but I think that given the exchange that you all have had, I would not want anything that I would do from here forward to be interpreted as responding to what might have been an implied threat on your part because we're at a stage in this proceeding where I think the Plaintiffs were about to ask for a contempt finding. And in that context, there's a lot of discretion about what I might do if I were to agree with the Plaintiffs and I'm just concerned that it would have -- you might perceive that something that I would do, if we got to that point, would be responsive to what you said about me.
>
> So I think discretion here would be the better part of valor, and I think it probably would be better if I step out of this.

(Id. at 2-4.)

In his e-mail, Mr. Buchsbaum questions my integrity by characterizing my opinions as "activism" and suggesting that the opinions in some way violate the code of conduct for federal judges.[1] (Pl.'s Mot. Ex. A.) The charge of

---

[1] In addition, Mr. Buchsbaum's e-mail also misstates my words. He alleges that I said "if [I] ordered arbitration, [I] would nullfy [sic] the last portion of the Neutrality Agreement that gives the arbitrator's award the same status as a court order." (Pl.'s Second Mot. to Enforce J. and the Ct.'s Orders, Ex. A.) This statement is inaccurate. The Court briefly touched on this topic at the hearing on the Union's first motion to enforce the Arbitration Order, merely stating:

> So the only issue then is . . . the concern that the arbitrator's ruling becomes effective as an order of this Court. So that's the only glitch. And if that's

5

"activism" by counsel is, to put it charitably, misguided. I issued both Orders in this case, as I always do, to rule on the relevant issues at hand within the context of the entire body of applicable law, <u>not</u> to advance a political or personal agenda. Little more needs to be said about this however; the Orders speak for themselves, as do the transcripts of the proceedings.

In addition to the reasons outlined in the chambers conference, the applicable law suggests recusal is appropriate here. Section 455(a) of Title 28 of the United States Code provides that, "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The statute "was designed to promote public confidence in the integrity of the judicial process by replacing the subjective 'in his opinion' standard with an objective test." <u>Liljeberg v.</u>

---

the only glitch, I can remedy that by simply saying that the arbitrator's ruling, which becomes an order of this Court, is stayed pending the outcome of the First Circuit's decision.

(Hr'g Tr. 37, July 28, 2010.)

If Mr. Buchsbaum had made such a misstatement to the Court rather than to opposing counsel, it likely would have been a clear violation of the Rhode Island Rules of Professional Conduct ("A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." Rule 3.3(a)(1)). In his later comments, which are quoted at length below, Mr. Buchsbaum reiterated this statement during the in-chambers conference.

Health Servs. Acquisition Corp., 486 U.S. 847, 858 n.1 (1988). Under § 455(a), the key to the analysis is perception: "what matters is not the reality of bias or prejudice but its appearance." Liteky v. United States, 510 U.S. 540, 548 (1994) (describing § 455(a) as a "catchall" recusal provision covering more than the specific illustrations of 28 U.S.C. § 144); In re Martinez-Catala, 129 F.3d 213, 220 (1st Cir. 1997) (observing that "recusal is required regardless of the judge's own inner conviction that he or she can decide the case fairly despite the circumstances"); see also Offutt v. United States, 348 U.S. 11, 14, (1954) (stating that "justice must satisfy the appearance of justice"). In the ordinary case, doubts should be resolved in favor of recusal. In re United States, 158 F.3d 26, 30 (1st Cir. 1998) (citing Nichols v. Alley, 71 F.3d 347, 352 (10th Cir. 1995); United States v. Dandy, 998 F.2d 1344, 1349 (6th Cir. 1993)).

I have complete confidence in my continuing ability to preside impartially over this case, as I have done since the action was filed. But the inquiry under § 455(a) is not a subjective one: it asks whether the court's impartiality "might reasonably be questioned." Given the posture of this case, where the Defendant has announced its intention to not comply with the Court's Enforcement Order, it is highly possible that the Plaintiff may seek sanctions. Future proceedings may follow

the appeal and could be highly contentious. In these circumstances it is certainly possible that one might reasonably question whether I could remain unbiased in light of Mr. Buchsbaum's assertions about me.

If Mr. Buchsbaum's commentary had ended with his e-mails, no more would need to be said as to recusal, because while his comments were inappropriate, they were private communications between counsel and not directed to the Court. However, Mr. Buchsbaum was apparently not satisfied with my decision to recuse during the October 5, 2010 in-chambers conference. After I finished addressing the parties to state my reasons for recusal, Mr. Buchsbaum asked to be heard on the matter. (Conference Tr. 8.) He proceeded to reiterate and expand upon many of the complaints expressed in his e-mail, this time addressing himself to me directly. (<u>Id.</u> at 8-11.) A full understanding of the nature of his comments can only be achieved by quoting his remarks at length:

> The e-mails were between me and Mr. Anderson, and it was his judgment to make them public.
>
> Secondly, and probably most important, I was prepared to recommend to my client that if you made a decision that an arbitrator should decide whether the neutrality agreement had expired or not, that we would go to arbitration, even though we think that's a decision for a court. But when you ventured further, and the only issue which Mr. Anderson said in the first argument in court when we had that was that if we're late, we lose; but when you went in and you offered some additional remarks, you took on the role

8

of an advocate. You first threw in the idea of post-expiration arbitrability; and in this latest decision in September, you talked about when the cards were obtained.

We were prepared to go to arbitration. We would have had an arbitration by now but for the fact that you decided things which weren't put in front of you by the Union, because we felt it would be a sham for us to have an arbitration. I said that in open court on July 28th and I told you it was not disrespectful, and you told me I was doing my job. Then your opinion comes out that I'm bemoaning, griping and so on. We asked you for a stay and you said no. And we don't agree with your reasoning but we have a right not to agree with your reasoning and I do think it was activism. That's not an insult. You had one issue which was in front of you, and that's what you said in the first and opening pages of your first decision. But you went further twice, and that's what I expressed to Mr. Anderson.

We were fully prepared, and I would swear on a stack of bibles that we were prepared to go to arbitration, but you made an arbitration impossible for us by giving an arbitrator ideas which should have been Mr. Anderson's to present, not the Court's, about post-arbitration and about when the cards were obtained. You were only asked to decide whether the agreement was in effect or not when they made the demand. That's why we're where we are, not because I'm trying to profit.

. . . .

If you consider – I never said I was going to file a disciplinary report, but I did find it insulting to have you say we were griping and bemoaning. That didn't add anything to the stature of the decision. It could have been dry without all those colorful words which were insulting to us. There's no reason for that. Just two weeks ago I introduced a young lawyer in our office to the court in Baltimore, to the Federal Court, and he was admitted and the federal judge said the most important thing is civility from judges to lawyers as well as from lawyers to judges and to each other.

> Now, Mr. Anderson should have known that when he attached those e-mails you were going to take umbrage and be offended, and he made that decision. That wasn't necessary. We're spending a lot more money because of what you did in your first decision. We would have had an arbitration. I asked you if you would vacate those pages and you wouldn't. And you said to me that you would if we had an arbitration protective so the arbitrator's decision wouldn't be an order of the Court. But that didn't appear when you wrote your decision on September 24th, did it? So look where you've put us. You've cost my client a fortune in legal fees because we're in litigation that we don't need to be in. If you had just decided the single issue that Mr. Anderson posed in his original complaint and which we thought was briefed, we wouldn't be in the mess we're in.
>
> We're not interested in going to the First Circuit and talking about arcane ideas about whether it's for a court or an arbitrator whether it expired. But how can we go to an arbitrator when you've given him two prongs, post-arbitrability and when the cards were obtained, as suggestions of making it unimportant when the agreement expired when we have in the transcript from the first hearing Mr. Anderson saying if we're late, we lose? Look at the position you've put us in.

(Id.)

Comments of this type, delivered directly to the Court and unresponsive to any pending issue, are virtually unheard of in this District. These remarks were discourteous and inappropriate, to say the least, and offend the traditional observance of decorum in this Court. See Rule 3.3(a)(1) and 3.5(d) of the Rhode Island Rules of Professional Conduct; see also LR Gen 208(a).

As noted above, however, because this Court stated its intention to recuse _before_ Mr. Buchsbaum engaged in his commentary, it is prudent to allow the judge assigned to the case after this recusal order enters to handle this matter as s/he deems appropriate. It is true that the Court had not actually entered a recusal order at the time of the comments; however, it had made its intention clear. Thus, while the Court would technically still have the authority over Mr. Buchsbaum to review his _pro hac vice_ status under LR Gen 204(f)(2), this would result in a delay in entering the recusal order, and potentially a delay in the case. Finally, since I have recused, I want to make clear that I am offering no opinion as to whether my successor, as the assigned trial judge, should initiate proceedings to revoke Mr. Buchsbaum's _pro hac vice_ privileges in this matter or not, and, if so, whether those privileges are revoked or not. It is of no ongoing concern to me now that I have recused and summarized the relevant facts. In view of the foregoing, deferral to the judge assigned is the better course.

For all of the reasons set forth above, I hereby recuse myself from this matter.

IT IS SO ORDERED.

/s/ William E. Smith
William E. Smith
United States District Judge
Date: October 20, 2010

11